IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-03060-PAB

BRENDA R. NURRE,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

**ORDER**

This matter is before the Court on plaintiff Brenda R. Nurre's opening brief [Docket No. 13], filed on May 13, 2013. Plaintiff seeks review of the final decision of defendant Carolyn W. Colvin (the "Commissioner") denying plaintiff's claim for disability insurance benefits and supplemental security income under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c.[1] The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

## I. BACKGROUND

On September 17, 2009, plaintiff applied for disability benefits under Title II of the Act. R. at 13. Plaintiff alleged that she had been disabled since July 1, 2008. *Id*. After an initial administrative denial of her claim, plaintiff appeared at a hearing before an Administrative Law Judge ("ALJ") on July 19, 2011. *Id*. On September 16, 2011,

---

[1] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

the ALJ issued a decision denying plaintiff's claim. *Id*. at 23.

The ALJ found that plaintiff had the following impairments, which, in combination, were severe: "history of partial tear of supraspinatus muscle; status post right knee injury; lumbosacral strain; right tronchanteric bursitis; major depression; anxiety disorder; premenstrual dysphoric disorder (PMDD)." R. at 15. The ALJ found that these impairments, alone or in combination, did not meet one of the regulations' listed impairments, *id*. at 16, and ruled that plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 C.F.R. § 404.1567(b) except the claimant can: stand, walk and sit each six hours in an eight-hour workday; can push and pull with the upper and lower extremities at the light exertional range; cannot climb ladders, ropes or scaffolds; can occasionally stoop, kneel, crouch and crawl; must avoid concentrated exposure to temperature extremes, vibrations and unprotected heights and unprotected running or operating major manufacturing machinery; can perform work at the semi-skilled level; and should have minimal contact with the general public, supervisors and co-workers.

R. at 17. Based upon this RFC and in reliance on the testimony of a vocational expert ("VE"), the ALJ concluded that, through her date last insured, plaintiff was "capable of making a successful adjustment to other work that existed in significant numbers in the national economy." R. at 23.

The Appeals Council denied plaintiff's request for review of this denial. R. at 1. Consequently, the ALJ's decision is the final decision of the Commissioner.

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to

determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B. The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). While the claimant has the

initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C.  The ALJ's Decision

Plaintiff alleges that the ALJ erred in (1) failing to properly consider the determination of the Department of Veterans Affairs that plaintiff is not employable; (2) failing to properly weigh the opinion of the state agency physician; (3) failing to properly assess the opinion of treating physician Stephen Bonney; (4) failing to properly weigh the opinion of Dr. Nancy Franzoso; and (5) failing to account for the moderate limitations the ALJ found that plaintiff had in maintaining concentration, persistence, or pace.  Docket No. 13.

Plaintiff argues that the ALJ erred in according no weight to the determination of the Department of Veterans Affairs (the "VA") that plaintiff is unemployable.  Docket No. 13 at 23-28.

An ALJ must "evaluate every medical opinion" received, "[r]egardless of its source."  20 C.F.R. § 404.1527(c).  The opinion of a treating source[2] is generally entitled to greater weight; if a treating source's opinion regarding the "nature and severity" of a claimant's impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, it is entitled to controlling weight.  *Id*. at § 404.1527(c)(2).  If an

---

[2]A "treating source" is a physician or other acceptable medical source who provides or has provided a claimant with medical treatment or evaluation and who has an "ongoing treatment relationship" with a claimant.  20 C.F.R. § 404.1502.

opinion is not entitled to controlling weight, it is weighed based on consideration of the following factors: examining relationship; length and nature of treating relationship; supportability; consistency; specialization; and any other relevant factors. *Id*. at 404.1527(c)(1)-(6). "Unless a treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist." *Id*. at § 404.1527(e)(2)(ii).

Another agency's decision regarding whether a claimant is disabled is not binding on the Social Security Administration. 20 C.F.R. § 404.1504. However, such a decision is "evidence that the ALJ must consider and explain why he did not find it persuasive." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). The "relative weight" to be given to another agency's determination of disability "will vary depending upon the factual circumstances of each case." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *see also McCartey v. Massanari*, 298 F.3d 1072, 1075 (9th Cir. 2002) ("No circuit has held that an ALJ is free to disregard a VA disability rating.") (listing cases).

In *Grogan*, the district court found that the ALJ's failure to consider the VA determination was based on an implicit finding that the determination was not relevant because it applied to a period of less than one year. 399 F.3d at 1263. On appeal, the Tenth Circuit held that the "district court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." *Id*. The Tenth Circuit concluded that the

"ALJ's failure to discuss the significance of the VA's disability evaluation in concluding that Grogan had not met the 'de minimus' required showing of a severe impairment at step two was reversible error." *Id*.; *see also Miller v. Barnhart*, 43 F. App'x 200, 204 (10th Cir. July 22, 2002) (ALJ's failure to address VA's disability determination was reversible error); *Bates v. Colvin*, 12-cv-02268-MSK, 2013 WL 5418183, at *4-6 (D. Colo. Sept. 27, 2013) (ALJ's failure to discuss the VA's determination of disability was reversible error even though VA determination was issued after the plaintiff's date last insured where ALJ did not supply valid basis for according no weight to VA's determination and VA "addressed the exact impairments in the Title II Claim at issue").

In order to be eligible for benefits, a Title II claimant must establish the "presence of a disabling condition(s)" beginning on or before the date she was last insured. SSR 83-20, 1983 WL 31249, at *1 (1983); 42 U.S.C. § 416(i)(3). To determine the onset of disability, an ALJ considers (1) a claimant's statement as to when her disability began; (2) the day that the claimed impairment caused the claimant to stop working; and (3) medical evidence relevant to the onset date. *Id*. at *2; *see also id*. at *3 ("the date alleged by the individual should be used if it is consistent with all the evidence available . . . . However, the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record."). "In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working." *Id*. at *3. "[I]n the case of slowly progressive impairments, it is not necessary for an impairment to have reached listing severity . . . before onset can be established." *Id*. at *2. "Evidence

bearing upon an applicant's condition subsequent to" the date last insured is "pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date." *Miller v. Chater*, 99 F.3d 972, 977 (10th Cir. 1996) (internal citation omitted).

In the administrative context, harmless error analysis is appropriate "where, based on material the ALJ did at least consider (just not properly), [a reviewing court can] confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

Plaintiff's date last insured was March 31, 2009. R. at 13. On May 7, 2010, Dr. Teresita Marcelo examined plaintiff for the purpose of assessing her employability pursuant to VA regulations. R. at 1659. Dr. Marcelo concluded that:

> Because of the service-connected disabilities as listed above, the veteran can only sit approximately 20 minutes at a time and needs to change position or stand. She can stand for 20 minutes at a time. She can walk for about 150 feet maximum and needs to change position, sit or stand. She can only lift a jug of milk. The veteran is also in chronic pain as noted above and is on continuous medications consisting of heavy narcotics as listed above. I do not think that the veteran would be employable for any gainful employment.

R. at 1667. Dr. Marcelo did not explain or discuss the likely onset date of plaintiff's impairments.

On May 6, 2010, plaintiff was examined by psychiatrist Robin Pedowitz. R. at 1668. Plaintiff told Dr. Pedowitz that she stopped volunteering in 2009 "due to difficulties with physical problems, including palpitations and other pain and crying in front of her clients." *Id*. at 1669. He found that she had a Global Assessment of

Functioning score of 50[3] for the past three to six months. *Id*. at 1673. He concluded that:

> The veteran's mental disorder symptoms require continuous medication. The veteran's mental disorder signs and symptoms result in deficiencies in most of the following areas: Work, family relations, judgment, thinking and mood. In my opinion, the veteran would have difficulty sustaining even simple work tasks in a loosely supervised environment. The veteran continues to be emotionally labile, experience chronic pain which interferes with her focus and performance of job tasks, and she also reports missing several days of work per month due to illness and attending various appointments. The veteran is unemployable at this time.

R. at 1673. Dr. Pedowitz did not explain or discuss the likely onset date of plaintiff's impairments.

On July 23, 2010, the VA issued a decision finding that plaintiff was unemployable as of January 20, 2009 based on findings of major depressive disorder, migraines, lumbosacral strain, right hip bursitis, left hip musculoskeletal strain, right knee trauma, right and left ankle trauma, and chronic sinusitis. R at 137-38. The decision states that the "evidence shows [plaintiff] met the schedular requirements for individual unemployability" as of January 20, 2009. R. at 139. The effective date of an award of VA benefits based on a claim of unemployability "shall be fixed in accordance with the facts found, but shall not be earlier than the date that is one year before the

---

[3]"The GAF is a 100-point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 n.1 (10th Cir. 2012) (citing American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32, 34 (Text Revision 4th ed. 2000)). A GAF score of 50 is indicative of "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Keyes-Zachary*, 695 F.3d at 1162 n.1.

date of receipt of the application." 38 U.S.C. § 5110(a)(2)(A). The VA decision was based on the opinions of Drs. Pedowitz, Marcelo, and Yashoda Sagar. R. at 139. The VA decision does not otherwise discuss the basis for the finding regarding the onset date of plaintiff's unemployability.

The ALJ discussed the medical opinions of a number of plaintiff's medical sources from the VA, but did not discuss the opinions of Drs. Marcelo, Pedowitz, or Sagar. *See* R. at 18-21. With respect to the VA's benefits decision, the ALJ stated:

> The undersigned gives no weight to the Department of Veterans Affairs (VA) determination that the claimant is unemployable because that agency's criteria for disability and employability is different from that of the Social Security Administration. For example: VA regulations do not provide criteria or guidelines to make employability assessments; VA vocational counselors do not assess how a veteran's disabilities affect job skills and work potential; and clinicians are not trained to conduct examinations to assess functional abilities and/or limitations for employability purposes. The undersigned must make a disability determination based on Social Security law. A determination made by another agency that an individual is disabled is not binding on the undersigned.

R. at 21.

Plaintiff argues that the ALJ erred in failing to accord weight to the VA's determination and failing to consider the underlying medical opinions it was based on. Docket No. 13 at 23-28. The Commissioner responds that the ALJ properly explained his reasons for not according any weight to the VA determination. Docket No. 17 at 12-13. The Commissioner further argues that the ALJ did not err in not discussing the opinions of Drs. Marcelo and Pedowitz because these opinions do not pertain to the period before plaintiff's date last insured and thus are not relevant. *Id*. at 14. The Commissioner states that the "January 2009 onset date was solely an administrative determination." *Id*. Plaintiff counters that the Commissioner is engaging in a "*post hoc*

attempt to salvage the ALJ's failure to properly discuss the evidence." Docket No. 18 at 7. Plaintiff further argues that it would be "illogical to allow the ALJ to reject evidence because it is not binding where that evidence must be considered even though it is not binding." *Id*. at 9.

According to Tenth Circuit precedent, the ALJ was required to consider the substantive import of the VA's determination of plaintiff's disability. *See Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993). Instead of stating that he considered this information and found that it was not relevant for the reasons that the Commissioner proposes, the ALJ stated that the was according the determination no weight because of the differences between VA and SSA regulations in evaluating disability. *See* R. at 21. This was error. Although regulatory differences render the VA's determination non-binding, they do not entirely relieve the ALJ of the responsibility to take such a determination into account. *See Baca*, 5 F.3d at 480.

As in *Bates*, 2013 WL 5418183, this error was not harmless. The VA's determination touched on the same impairments at issue in this matter and disclosed serious functional limitations not included in the ALJ's RFC. *See id*. at *5; compare* R. at 137-38 *with* R. at 15. In addition, the VA found that plaintiff's period of disability began in January 2009, several months before her date last insured. R. at 139. In light of these factors, the court cannot "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *See Allen*, 357 F.3d at 1145. The Commissioner's argument that the opinions of Drs. Marcelo and Pedowitz are irrelevant is a post-hoc rationalization, not

articulated or suggested by the ALJ's decision. *See Grogan*, 399 F.3d at 1263. The examination evidence is not per se irrelevant simply because the examinations were performed after plaintiff's date last insured. *See Miller*, 99 F.3d at 977. In sum, the Court finds that the failure to accord any weight to the VA's disability determination, simply because the VA regulations differ from those of the SSA, was reversible error.

The Court will not address the ALJ's assessment of other medical opinions in the record because the ALJ's analysis on remand may impact how these other opinions in the record are viewed. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand."). The Court, however, will add that the ALJ, when assessing the opinions of medical sources on remand, must weigh each opinion according to the relevant factors set forth in 20 C.F.R. § 404.1527(c), unless controlling weight is accorded to the opinion of a treating source.

### III. CONCLUSION

Wherefore, it is

**ORDERED** that the decision of the Commissioner that plaintiff was not disabled is REVERSED and REMANDED for further proceedings consistent with this opinion. On remand, the ALJ shall consider the VA's finding of disability and determine how much weight to accord it based on the particular facts of this case.

DATED March 31, 2014.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge